THE BOARD OF SUPERVISORS OF THE COUNTY OF OTSEGO *vs.*
JAMES I. HENDRYX and others.

The compensation to a county treasurer, where the board of supervisors have
   omitted to fix it otherwise, is one half of one per cent for receiving, and one
   half of one per cent for disbursing moneys, until the commissions come up
   to $500; which sum they cannot exceed, except in those counties where
   other compensations are fixed by law.
In the absence of any act or resolution of the board of supervisors, fixing the
   compensation of the county treasurer therefor, he is entitled to a commis-
   sion of one per cent for receiving and disbursing moneys, between the time
   of the settlement of his account, for the previous year, with the board, in
   November, and the expiration of his term of office on the 1st of January,
   thereafter.

THIS action was brought against the defendant Hen-
dryx, late treasurer of Otsego, and the other defend-
ants as his sureties in the official bond for faithful perform-
ance &c., to recover $332.84, claimed to be the balance in
the hands of Hendryx as late treasurer.   Hendryx claimed
it as his legal fees and commissions for services as treas-
urer.   At the expiration of his time as treasurer, 1st of
January, 1867, there was in his hands, of money received
from taxes in the fall of 1866, $2665.84, of which he paid
over to his successor in office $2333, leaving the sum of
$332.84, which is the subject of this action.   There are
no disputed questions or fact.   Hendryx received for his
services as treasurer, for the calendar year of 1866, the
sum of $800, besides this sum of $332.84; but $300 of
this amount was received by virtue of a special act of the
legislature of 1867; so that by virtue of the law, and of
the general statutes, he had received $500 only, between
November 1865, and November 1866.

It was undisputed that Hendryx had been fully settled
with and paid for all services prior to the year 1865,
and, that at the November session of the board of super-
visors he settled his accounts with that board for the past
year, in which he had received, as his fees, $1321.11.
And he again settled with the board of supervisors at

their November session of 1866. And it also appears that at the session of the board in 1866, they " resolved that the county treasurer receive not to exceed the sum of five hundred dollars for his services as county treasurer for the past year." They adding, " such being the extent of the amount allowed by statute in such case made and provided."

The only question in the case was a question of law, to wit, whether the defendant Hendryx was entitled to the commission of one per cent, as commissions or fees, upon the receipt and payment of the sum of $33,284, received and paid by him, after the settlement with the board of supervisors, in November 1866, and between that time and the expiration of his office, January 1, 1867. This is just the amount in dispute, $332.84.

The learned judge at the trial ordered a verdict for the plaintiff, for this sum.

*E. Countryman,* for the plaintiffs.

*S. S. Edick,* for the defendants.

*By the Court,* POTTER, J. There is no evidence in this case to inform the court when the fiscal year begins or ends with the board of supervisors of Otsego county, which they adopt in their settlements and allowances of compensation to the fiscal officers of the county, except such as may be inferred from the evidence, that they made their annual settlements with their treasurer at their annual meetings in November of each year, and from the provisions of the statute, (1 *R. S.* 367, § 2,) which requires them at such meeting " to examine, settle and allow all accounts chargeable against such county, and to direct the raising of such sums as may be necessary to defray the same." It is therefore very clear to my mind that the November meeting of that board is the beginning and end

Supervisors of Otsego *v.* Hendryx.

of their fiscal year, as well by law, as in practice; and that it is not the official year of the officer to which the compensation belongs. Different counties elect their treasurers at different periods. Besides, the statute provides that in case of death, removal or resignation of such treasurer, the board of supervisors shall appoint, to supply the vacancy. This creates no change in the fiscal year, and no inconvenience in the allowance of compensation; for if the compensation be a fixed sum, the incumbent receives his due proportion for the time he serves, and if he is paid by a commission, it is determined by the amount of moneys he receives and pays out. If we are right in this assumption, then the verdict in this case ought to have been directed for the defendant; for after the settlement made with him in November, 1866, for the preceding year, that is, from November 1865, to November 1866, he received and disbursed for the county the sum of $33,284. If he was serving for a fixed salary or compensation, then he was entitled to such proportion of a year as passed between the November settlement in 1866, and the time of the expiration of his office; but his salary was not fixed for that period. If his compensation was the legal commission upon the money received and paid out after the last settlement with the board of supervisors, then he was entitled to the sum he retained, $332.84.

The board of supervisors of Otsego county never fixed the amount of compensation for their county treasurer, as was their duty to do under the act of 1846. This omission did not deprive the treasurer of the right to some compensation; and as they settled with him annually, but produced no evidence of the amounts they allowed him in such settlements, the presumption of law is that he was paid the legal and proper amounts. But there is something stronger than presumption in the case. The board seemed to be well informed as to the amount they

were authorized to pay, by the law of 1846; for in the year 1864 the board resolved that it appeared that there was justly due to the treasurer $300; "and whereas the same cannot be paid, by the law of 1846, therefore, resolved, that the said sum of $300 be paid to said J. I. Hendryx, treasurer, upon an act of the legislature being passed allowing the same; and the legislature is hereby requested to pass such an act;" and in 1867 the legislature did pass such act. It does appear that in the year 1865 the treasurer received $1321.11 for services on the receipt and payment of $132,111.04, and perhaps it is to be inferred that he was allowed that sum by the board of supervisors in their settlement, but this does not positively appear. It does not appear what amount he received and disbursed in any other year. The proof of settlement by the board of supervisors with the treasurer, in the fall of 1865, carries with it the presumption that his compensation was included; more especially so, as they had never fixed his compensation as they were required to do by the statute of 1846. It is the further presumption from the resolution of 1864, that they knew the limit fixed by the act of 1846, and the still further presumption that they, as public officers, did not violate the law in their settlement. At the November session of the board, in 1866, they passed a resolution that *for the past year* the treasurer receive *not exceeding* $500, for his services. This was no fixing of his compensation; it was only fixing an ultimatum beyond which he should not go. It does not appear what amount of money came into his hands during that year. They did not, in this resolution, at all comply with the statute "to fix the amount." He had a right, by the statute of 1846, to receive one half per cent for receiving, and one half per cent for disbursing, unless said commission exceeded $500. That sum he could not exceed, but he was not entitled to that sum by law, if his commissions did not amount to it. So that their reso-

lution was a mere statement of what the statute was, without at all fixing the compensation. They say "it shall not exceed $500;" but do not fix it at that, or any other sum. Their resolution was a perfectly safe one, but was legally useless; it was entirely without effect, and if it could have had any effect, it was confined to his compensation for "the last year," and did not apply to the future. But it is to be presumed that in their settlement with the treasurer in the November session of 1866, they allowed him, the maximum provided by law, and in their resolution, $500. And as conclusive evidence that the November session of the board was the termination of the fiscal year, it appears that at the meeting of the same board 2d of January, 1867, two days after the expiration of his office, called to examine his accounts, their committee reported that the said treasurer had in his hands $2665.84, *without allowing him anything for his services since the last session.* This committee recommended, however, that the new board of supervisors pay him liberally for such services, in consequence of the large amount he thought necessary to borrow. Here is a distinct acknowledgment for unpaid services not allowed in former settlements. The simple question then is, what is he entitled to for his services after the end of the fiscal year which terminated with the November settlement in 1866?

It does not appear that there were any moneys in his hands at the date of that settlement. It does appear that the sum of $33,284 came into his hands afterwards. It does not appear that the board of supervisors ever fixed the compensation of their treasurer, except a maximum for the one fiscal year between November 1865 and November 1866. He has a right to some compensation for his services after the last settlement. In case of the omission of the performance of the duty of the board to fix it, what is the compensation by law? I think it entirely clear, and is settled by the statutes of 1846 and 1863, which

are not in conflict, and both are in force; and it is only necessary, in order to determine this, to read those statutes. In 1846 it was enacted that "the several county treasurers of this State shall *hereafter* receive for their services, *instead* of the fees *now* allowed by law, such compensation as shall be fixed by the respective boards of supervisors of their respective counties, *not exceeding* the half of one per cent for receiving, and the half of one per cent for disbursing, and in *no case* to *exceed* the sum of *five hundred* dollars per annum." In 1863 it was also provided, that "it shall be the duty of the several county treasurers of this State, on or before the first day of April in each year, to pay the treasurer of this State the amount of State tax raised and paid over to them, respectively, *retaining the compensation to which they may be entitled,* and which compensation shall *not exceed* the amount now *authorized by law,* and shall not in *any case* exceed the sum of two thousand dollars."

In the official term of the defendant Hendryx he was acting under the provisions of these statutes; both were in force; but it is not necessary to give them construction beyond the question raised in this case. Neither of these statutes changed the provisions of the Revised Statutes, except where the commissions exceeded $500; unless the board of supervisors exercised the power of fixing such compensation. They could make it less than $500. This is all that was intended in the dictum of *The People* v. *Devlin,* (33 *N. Y.* 274.) When the commissions exceeded $500, the act of 1846 limited the previous compensation; when they did not exceed that sum, the per centage was allowed. When the supervisors took no action under the act of 1846, commissions could be charged up to $500. Statutes must have a reasonable construction. It is not reasonable to suppose that the legislature intended that county treasurers should have no compensation if boards of supervisors neglected to perform their duty

Supervisors of Otsego *v.* Hendryx

under the statute of 1846. Assuming, then, that the law of 1846 was in full force in the year 1866, when the defendant Hendryx performed these services, after his November settlement in that year, and that the board of supervisors had omitted to fix his compensation, is he entitled to no compensation? He had received from the county, funds to the amount of $33,284. It was his duty to receive, and to safely keep, them. His sureties or bail —the other defendants—were responsible that he should perform his duty in receiving and keeping and disbursing these funds according to law. By his discharge of all previous duties, they were discharged from all previous liability. As to such other moneys, and the faithful performance of all other previous duties, there is no evidence of a breach. Can it be; is it reasonable; is it the intent of the statute, that he should be compelled to perform this duty, and he and his sureties be held responsible for its performance, and he receive no compensation for it? Clearly not. If, then, there is a compensation, what is it? Precisely what he retained; no more; no less—one half of one per cent for receiving, and one half of one per cent for disbursing. This is clearly the compensation where the board of supervisors have omitted to fix it otherwise, until the commissions came up to $500, which they cannot exceed, except in those counties where other compensations are fixed by law.

If I am right in these views, a judgment should be ordered for the defendants in this case, with costs.

Judgment accordingly.

[THIRD DEPARTMENT, GENERAL TERM, at Elmira, September 6, 1870. *Miller*, P. J., and *Potter*, Justice.]